FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 23 2012 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

JASON BENJAMIN,

                     Plaintiff,

-against-

CAPTAIN FLORES, C.O. Davis, C.O. Woods,

                     Defendants.

-------------------------------------------------------------------- X

11-CV-4216 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

AMENDED OPINION AND
ORDER

ROSS, United States District Judge:

Jason Benjamin ("plaintiff") brings this pro se action, pursuant to 42 U.S.C. § 1983, against Captain Flores, Correction Officer ("C.O.") Davis, and C.O. Woods (collectively, "defendants"), for purported violations of his constitutional rights during an incident that allegedly occurred on April 27, 2011, while plaintiff was incarcerated at the Anna M. Kross Center ("AMKC"). Before the court is defendants' unopposed motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff's claims pertain to an alleged incident during his incarceration at the AMKC. Specifically, he alleges the following:

> On April 27, 2011, at approximately 8:00 pm and 8:30 pm, I was on the visiting room floor at AMKC-C-95 enjoying myself with my visitor . . . . As we were hugging and kissing each other, I was pulled up out of my seat by C.O. Woods by the collar of my jumpsuit and told to place . . . my hands behind my back by C.O. Davis[.] I asked "Why are you disrupting my visit[?]" I was then roughly grabbed by my arms, they were placed behind my back[,] and [I was] dragged off the visiting

1

> floor, humiliating me in front of my fiancé[e]. Once off the visiting room floor and in the search area, I was told to strip. Once I was naked I was told to squat[.] After I did that, I got up and was visciously [sic] slapped by C.O. Woods because he did not say get up, so I complied and squatted again and did not get up until he said so. After 10 minutes they told me to get dress[ed and] my visit was cancelled. I was falsely accussed [sic] of smuggling. Nothing was found on me or my visitor and I rec[ei]ved 6 months booth visits and my fianc[ée] cannot come up for 45 days. I rec[ei]ved no ticket nor was I discipl[in]ed.

Compl. ¶ IV. Plaintiff is not claiming any injuries as a result of the events. Id. ¶ IV.A. He seeks restoration of his visiting privileges and monetary relief for mental and emotional stress. Id. ¶ V. Plaintiff has submitted a grievance through the AMKC's grievance procedures and "rec[ei]ved an answer from the Commissioner saying the[y are] investigating." Id. ¶ II.

Plaintiff filed this action on August 30, 2011. In lieu of answering, defendants moved to dismiss the complaint. Plaintiff has not responded. The court deems the motion fully briefed. For the reasons discussed below, defendants' motion to dismiss is granted in part and denied in part.

## DISCUSSION

I. <u>Standard of Review</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although still subject to the facial probability standard, a pro se complaint must be construed liberally and is held to less stringent standards than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

2

II. The Claims

In order to maintain a claim under 42 U.S.C. §1983, plaintiff must allege the presence of two elements: "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). Construed liberally, plaintiff's complaint may be viewed as raising a claim of excessive force, objecting to the reasonableness of the strip search, objecting to the conditions of his confinement, and asserting a violation of his due process rights with regard to the subsequent deprivation of his visitation privileges.

 *A. Personal Participation of Captain Flores and C.O. Davis*

As a prerequisite to a § 1983 damage award, a plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivation. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). To sustain such a suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Here, although plaintiff names Captain Flores as a defendant and states that "[a]ll officers named in this suit work in the visiting room," there is no allegation that would permit a finding that Captain Flores was personally involved in any of the alleged misconduct of which defendant complains. Captain Flores is, accordingly, dismissed as a defendant.

Similarly, plaintiff alleges that C.O. Davis told him to place his hands behind his back before he was escorted from the visitation room. Plaintiff does not allege C.O. Davis's personal participation in any other misconduct. Further, to the extent that C.O. Davis's actions disrupted plaintiff's visit, such disruption does not rise to the level of a constitutional violation. The

3

Supreme Court has held that restrictions on prison visits are reasonably related to a legitimate penological function, namely, preventing introduction of contraband. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 134 (2003). The complaint admits that plaintiff was "accussed [sic] of smuggling," albeit falsely. C.O. Davis's participation in removing plaintiff from the visitation room so that a search could be conducted does not, therefore, constitute personal involvement in a constitutional violation. Accordingly, C.O. Davis is dismissed from the case.

  B. *Claims Against C.O. Woods*

Plaintiff alleges the C.O. Woods subjected him to a strip search, during which he slapped plaintiff. The Supreme Court has held that strip searches, including visual body cavity inspections, are reasonable to prevent smuggling of contraband into prisons. <u>Bell v. Wolfish</u>, 441 U.S. 520, 558-60 (1979). The strip search, by itself, does not therefore rise to the level of a constitutional violation.

Plaintiff also complains, "Once I was naked I was told to squat after I did that, I got up and was visciously [sic] slapped by C.O. Woods because he did not say get up. So I complied and squatted again and did not get up until he said so." Because plaintiff was a pretrial detainee, he is protected from "excessive force amounting to punishment by the Due Process Clause of the Fourteenth Amendment[.]" <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999). The Second Circuit has held that the minimum standards for whether abuse by a prison guard states a constitutional claim under the Eighth Amendment, established by the Supreme Court in <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992), apply to excessive force claims brought under the Fourteenth Amendment. <u>Walsh</u>, 194 F.3d at 48. Accordingly, though plaintiff was a pretrial detainee at the time of the alleged incidents, the Eighth and Fourteenth Amendment analyses are the same.

4

To make out a Fourteenth Amendment claim, a pretrial detainee must establish an objective and a subjective element. Id. at 49-50 (citing Hudson, 503 U.S. at 8); see Wright v. New York City, No. 09-cv-2452 (CBA)(LB), 2012 WL 4057958, at *3 (E.D.N.Y. Sept. 14, 2012). Under the objective element, the plaintiff's injury need not be "'serious'" or "'significant,'" but the force used must be more than de minimis. Walsh, 194 F.3d at 50 (quoting Hudson, 503 U.S. at 7-9). The objective component is "contextual and responsive to contemporary standards of decency." Hudson, 503 U.S. at 8 (internal quotation marks and citation omitted). The subjective element requires that the defendant have a "sufficiently culpable state of mind," Walsh, 194 F.3d at 50 (internal quotation marks omitted), "shown by actions characterized by wantonness," Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999) (internal quotation marks omitted).

Defendants argue, firstly, that "slapping [plaintiff] once during a strip search is a de minimis use of force." Defs. Mem. of Law in Supp. of Mot. to Dismiss 7 (Dkt. #28). Defendants cite one case in which an officer's striking a prisoner was held to be de minimis. Id. (citing Perry v. Stephens, 659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009)). This court notes that other cases have held the same. See, e.g., Lopez v. City of New York, No. 05 Civ. 10321(NRB), 2009 WL 229956, at *8 (S.D.N.Y. Jan. 30, 2009) (plaintiff struck with open-handed slap to back of head); Perkins v. Brown, 285 F. Supp. 2d 279, 284-85 (E.D.N.Y. 2003) (plaintiff allegedly punched); Cunningham v. Rodriguez, No. 01 Civ. 1123(DC), 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22 2002) (plaintiff allegedly hit in back and face); Santiago v. C.O. Campisi Shield No. 4592, 91 F. Supp. 2d 665, 674-75 (S.D.N.Y. 2000) (plaintiff allegedly slapped on jaw); Yearwood v. LoPiccolo, No. 95 CIV. 2544(DC), 1998 WL 474073, at *7 (S.D.N.Y. Aug.

5

10, 1998) (plaintiff allegedly choked and punched). However, all of these cases were grants of motions for summary judgment, where evidence presented to the court either undermined the credibility of the plaintiff's allegations or showed the plaintiff's injuries to be minimal. The court is mindful that "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). However, without further information about the need for the application of force, the relationship between the need and the force used, or the extent (or lack) of plaintiff's injuries, the court cannot say at this stage that the slap was de minimis as a matter of law. See Messina v. Mazzeo, 854 F. Supp. 116, 130 (E.D.N.Y. 1994) (holding that lack of allegation of serious physical injury does not require dismissal on 12(b)(6) grounds in Fourth Amendment excessive force case). Nevertheless, plaintiff has not only alleged no serious injury; he has alleged no injury at all. The Second Circuit has noted its agreement with other circuits that "some degree of injury is ordinarily required to state a claim after Hudson." Walsh, 194 F.3d at 50. Plaintiff's complaint is therefore insufficient to plausibly allege the objective element of a Fourteenth Amendment claim. See Iqbal, 556 U.S. at 678.

Plaintiff still may be able to maintain an excessive force claim if the force used against him was "'repugnant to the conscience of mankind,'" Walsh, 194 F.3d at 50 (quoting Hudson, 503 U.S. at 10), or was used "'maliciously and sadistically,'" id.. The Second Circuit has held that "certain actions, including the malicious use of force to cause harm, constitute Eighth Amendment violations per se," because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." Blyden v. Mancusi, 186 F.3d at 263 (internal quotation marks omitted) (alteration in original). Therefore,

even in the absence of significant injury, if a complaint may be construed to allege the malicious use of force, an excessive force claim should not be dismissed for failure to state a claim. Cole v. Fischer, 379 F. App'x 40, 42 (2d Cir. 2010); Wright v. Goord, 554 F.3d 255, 270 (2d Cir. 2009) ("[T]he absence of any significant injury to Wright does not end the Eighth Amendment inquiry, for our standards of decency are violated even in the absence of such injury if the defendant's use of force was malicious or sadistic.").

Defendants argue that C.O. Woods could not have acted maliciously because "when C.O. Woods allegedly grabbed plaintiff by the collar and slapped him, plaintiff was suspected of smuggling contraband." Defs. Mem. of Law in Supp. of Mot. to Dismiss 8 (Dkt. #28). It is not clear, however, how slapping a prisoner is rationally related to the legitimate penological interest in preventing smuggling of contraband. Cf. Overton, 539 U.S. at 134 (noting that withdrawing visitation privileges from prisoners with substance abuse violations is "a proper and even necessary management technique" for deterring such violations); see Walsh, 194 F.3d at 50 ("Here, a 300 to 400 pound prison guard repeatedly and sadistically tortured a mentally disturbed prisoner for no legitimate penological purpose. . . . Thus, even assuming that Walsh's acts did not constitute more than de minimis uses of force, they violated the Eighth Amendment."); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) ("Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind."). Although a "vi[]cious[] slap[]" is by no means as severe as the brutal mistreatment in Walsh, neither can the court say – at the motion to dismiss stage, construing the complaint liberally – that the slap was applied "in a good faith effort to maintain or restore discipline," rather than "maliciously or

7

sadistically" to cause harm. Johnson, 481 F.2d at 1033; see also Abreu v. Nicholls, 368 Fed. App'x 191, 194 (2d Cir. 2010) (reversing summary judgment for prison guards on excessive force claim where record supported finding "that it was a calculated effort to apply a moderate amount of force in a way that threatened the use of significantly greater force" and "the context of the action was totally removed from any proper penal purpose"). Though plaintiff's excessive force claim may be "weak" or "thin," Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999), it plausibly states a claim that C.O. Woods acted unlawfully, Iqbal, 556 U.S. at 678, and therefore dismissal for failure to state a claim is inappropriate. See Griffin, 193 F.3d at 91-92 (reversing judgment that plaintiff's injuries were de minimis as a matter of law where there were "genuine issues of material fact concerning what transpired . . . and whether the guards maliciously used force"); Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) ("[A] prisoner who alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, states an Eighth Amendment claim on which he is entitled to present evidence."). Accordingly, defendants' motion to dismiss with respect to the excessive force claim against C.O. Woods is denied.

C.   *Subsequent Restriction of Visitation Privileges*

Plaintiff further alleges that, although no contraband was found during the search, his visitation privileges were restricted to "6 months booth visits and my fianc[ée] cannot come up for 45 days." The court construes this claim as a challenge to the conditions of plaintiff's confinement and as a claim for a violation of plaintiff's right to procedural due process. See Kozlowski v. Coughlin, 539 F. Supp. 852, 856 (S.D.N.Y. 1982) (noting that State of New York has granted its prisoners protected liberty interest in receiving visits from persons of their

8

choice). However, the complaint does not specify who denied plaintiff's visitation privileges, or whether they did so without a hearing. Accordingly, plaintiff's claims regarding the restriction of his visitation privileges are dismissed with leave to amend.

### D. *Exhaustion*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Prisoners must "'complete the administrative review process in accordance with the applicable procedural rules.'" Id. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

"[F]ailure to exhaust is an affirmative defense . . . and . . . inmates are not required to plead or demonstrate exhaustion in their complaints." Id. at 216; accord Land v. Kaufman, No. 07 Civ. 8070(GEL), 2009 WL 1106780, at *5 (S.D.N.Y. Apr. 23, 2009) ("Exhaustion of administrative remedies is an affirmative defense that defendants bear the burden to raise and prove."). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998); see Sloane v. Mazzuca, No. 04 CV 8266(KMK), 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[A]

9

complaint may be dismissed if plaintiff's failure to exhaust administrative remedies is apparent from the face of the complaint."). However, "if, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle." McCoy v. Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003). Plaintiff here asserts that he filed a grievance pursuant to prison procedures and was told that the complaint was under investigation. Compl. ¶ II. This assertion, by itself, does not necessarily mean that plaintiff has not exhausted administrative remedies. See Gssime v. Watson, No. 09-CV-5581(JS)(ETB), 2012 WL 540926, at *6 n.2 (E.D.N.Y. Feb. 16, 2012); Miller v. Bailey, No. 05-CV-5493(CBA)(LB), 2008 WL 1787692, at *4 (E.D.N.Y. Apr. 17, 2008); Barney v. Bureau of Prisons, No. 02-CV-5284 SJF LB, 2004 WL 2810108, at *1 (E.D.N.Y. Dec. 8, 2004). Because failure to exhaust under the PLRA does not amount to a failure to state a claim, Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999), dismissal on defendant's 12(b)(6) motion is inappropriate.

The court also declines at this time to convert defendants' motion into a motion for summary judgment. Although defendants have submitted matters outside the pleading, see Def's Decl. Re Mot. To Dismiss for Failure to State a Claim Ex. C (Dkt. #35), defendants' submissions do not clarify whether plaintiff has exhausted administrative remedies or not.

## CONCLUSION

For the reasons stated above, with respect to plaintiff's claims against Captain Fowler and C.O. Davis, defendants' motion to dismiss is granted. With respect to plaintiff's claim of excessive force against C.O. Woods, defendants' motion is denied. With respect to plaintiff's claims regarding suspension of his visitation privileges, defendants' motion is granted. With

respect to the issue of exhaustion of administrative remedies under the PLRA, defendants' motion is denied. Those aspects of plaintiff's complaint that are dismissed are dismissed without prejudice. Plaintiff will have leave to replead, pursuant to Federal Rule of Civil Procedure 15(a), by November 20, 2012.

SO ORDERED.

/S/ Judge Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated:    October 23, 2012
              Brooklyn, New York

SERVICE LIST:

**Plaintiff:**

Jason Benjamin
#12A1209
Upstate Correctional Facility
750 Berme Road
P.O. Box 800
Napanoch, NY 12458